[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Pursuant to an Order entered on February 12, 1992, the Superior Court, the Honorable Robert D. Krause presiding, approved the application of Maurice C. Paradis, then Director of the Department of Business Regulation, as Receiver of Heritage Loan and Investment Company ("Receiver") to have the Court appoint a master with respect to claims relating to "off-line" deposit accounts at Heritage Loan and Investment Company ("Heritage"). See the Order dated February 12, 1992. As a result of said Order, William J. McAtee, Administrator/Master of the Superior Court was appointed as Master in the above-captioned receivership.
The Order provided that the Master:
 "is appointed . . . for the purpose of hearing and determining the claims filed with the receiver relating to off-line deposit accounts, which claims shall be deemed to include claims to funds evidenced by handwritten or typewritten savings passbooks claims to funds alleged to have been withdrawn without the depositor's authority to do so, claims to funds evidenced by safekeeping receipts, and claims to any funds which are not verifiable on the computer records maintained by Heritage Loan and Investment Company:"
 "That Master McAtee shall have all of the powers of a Justice of the Superior Court with respect to the hearings and determination of off-line deposit account claims, including, without limitation, those powers enumerated in Rhode Island General Laws 8-2-11.1 (1985 Reenactment)."
R.I.G.L. 8-2-11.1 provides, in pertinent part, that:
 "Such administrator/master may be authorized: (1) To regulate all proceedings before him: (2) To do all acts and take all measures necessary or proper for the efficient performance of his duties: (3) To require the production before him of books, papers, vouchers, documents and writings: (4) To rule on the admissibility of evidence: (5) To issue subpoenas for the appearance of witnesses, to put witnesses on oath, to examine them and to call parties to the proceeding and examine them upon oath;"
In accordance with the above, a hearing was held on the above referenced claim on June 23, 1992 and June 16, 1994. At the conclusion of the hearing, the parties submitted Post-Hearing Memoranda.
Claimant alleges that she is the owner of two "off line" accounts at Heritage. The first Claimed Account was numbered 0101000001 and was opened at the Pocasset Avenue office of Heritage on or about February 1, 1989 with an initial deposit of $8,000. This initial deposit, as well as all other deposits allegedly made to the account were in cash. The second Claimed Account was numbered 0101002005-3 and was opened on February 13, 1990 at the same branch of Heritage. As evidence of these accounts. Claimant has produced handwritten Heritage passbooks. The sum claimed to be on deposit with Heritage amounts to $46,000. Neither of the Claimed Accounts was never entered into the records of Heritage.
Claimant testified that she made deposits in small denominations because she did not want her family and friends to know about the accounts. In opening the accounts Claimant made arrangements with Mr. Raymond Marotto who was the senior loan officer at the Pocasset Avenue branch.
During the period in question there were two tellers at this branch of Heritage. Ms. Lori Imondi and Ms. Fran Yurcak. Both testified at the hearing as to the procedure followed for Claimants accounts. Claimant would tender cash the tellers would count it, enter the amount in ink into the passbook and return the passbook to the Claimant. Both tellers were instructed in this procedure by Mr. Marotto. The transactions were not to be recorded into the records of Heritage. Neither teller has any recollection of specific transactions but both acknowledge Claimant as a customer doing business during the period.
Besides the handwritten passbooks, introduced into evidence there is no evidence in Heritage records that the deposits were made. However, on various dates there is a fluctuation in the "plug figure" that may, or may not, apply to the Claimed Account. A "plug figure" on the cash settlement sheets represented money that should have been in Heritage but for some reason was not. Said plug figure is not a device in accord with generally accepted accounting principles but was used at Heritage to balance out the daily settlement sheets. This plug figure at Heritage therefore represented a "bank within a bank" an increase in the figure represents money that had gone out of Heritage without a corresponding withdrawal, a decrease means that money came into Heritage and was not evidenced by a deposit or loan payment.
Also testifying was Joseph Mollicone, Jr., former president of Heritage Mollicone stated that the Claimant entered into an agreement with him personally and did not establish accounts with Heritage in the usual course of that institutions business. According to this agreement the Claimed Accounts were established with Mollicone and the Claimant would deposit and withdraw monies with him not Heritage However, Mollicone also admitted that Claimant conducted her business at the Pocassett Avenue branch rather that at the Atwells Avenue branch where he maintained his office. In addition, Mollicone acknowledged that he never spoke to the Claimant at any time prior to her opening either of the Claimed Accounts.
When a party makes a claim for funds allegedly on deposit at a financial institution, the party so claiming bears the burden of proof to establish the existence of the account so claimed.O'Neil v. New England Trust Co., 28 R.I. 311. 67 A. 63 (1907). A passbook reflecting such a deposit is prima facie evidence of such a deposit. However, the Receiver may introduce evidence to refute the prima facie case.
The term "deposit" is defined at 12 U.S.C. § 1813(1) which state in pertinent part as follows:
 (1) The unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account, or which is evidenced by a certificate of deposit. thrift certificate, investment certificate, certificate of indebtedness, or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association, or a letter of credit or a travelers check on which the bank or savings association is primarily liable. . .
 (3) money received or held by a bank or savings association, or the credit given for money or its equivalent received or held by a bank or savings association in the usual course of business for a special or specific purpose, regardless of the legal relationship thereby established, including without being limited to, escrow funds, funds held as security for an obligation due to the bank or savings association or others (including funds held as dealers reserves) or for securities loaned by the bank or savings association, funds deposited by debtor to meet maturing obligations, funds deposited as advance payment on subscriptions to United States Government securities, funds held to meet its acceptances or letters of credit, and withheld taxes; Provided, that there shall not be included funds which are received by the bank or savings association for immediate application to reduction of indebtedness to the receiving bank or savings association, or under condition that receipt thereof immediately reduces or extinguishes such indebtedness.
In Federal Deposit Insurance Corp. v. Philadelphia GearCorp., 476 U.S. 426, 106 S.Ct. 1931, 90 L.ED.2d 428 (1986), the Supreme Court listed the standards to be met in order to be classified as a "deposit". The Court stated that to qualify as a "deposit" under 12 U.S.C. § 1813 (l)(1), it must be shown that: (1) there is an unpaid balance: (2) of hard earnings; (3) received or held by the bank; (4) in its usual course ofbusiness (emphasis added); (5) for which it has given or is obligated to give credit. In Philadelphia Gear, the Court held that a stand-by letter of credit did not fall within the meaning of an insurable "deposit" because it was only a contingent obligation and did not represent "hard earnings".
In the instant case, there is no evidence before this Court that would lead the Court to conclude that the Claimant understood that her transactions were with Mollicone rather than Heritage. Mr. Mollicone had one understanding of the agreement but the Court is of the belief that Claimant did not share in that understanding. All of the transactions were conducted by Heritage employees, at a branch of Heritage and evidenced by a Heritage passbook. Furthermore Mollicone never discussed with this Claimant any terms or conditions before the account was opened. Also, even after the account was opened, discussions were causal and in passing with the Claimant asking only that the account be kept secret from a particular individual Claimant has freely admitted that she wished that the account be kept secret from certain people but that in and of itself is insufficient evidence to conclude that the passbook in question was anything other than it appeared to be.
After careful review of the evidence and consideration of the testimony of the various witnesses, this Court holds that Claimant is in possession of deposit accounts at Heritage and is therefore entitled to priority.